THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRACE A. FITZGERALD, as administratrix ad prosequendum of the Estate of Thomas Fitzgerald and in her own right, | HON. JEROME B. SIMANDLE |
| | Civil No. 05-1264 (JBS) |
| Plaintiff, | **OPINION** |
| v. | |
| BELLMAWR BOROUGH, BELLMAWR BOROUGH POLICE DEPARTMENT, WILLIAM PERNA, and ROBERT SWANSON, | |
| Defendants. | |

APPEARANCES:

Sheldon A. Goodstadt, Esq.
OZMAN, LEVITAN, GOODSTADT & KREVITZ, P.C.
1307 White Horse Road, Building B
Voorhees, NJ 08034
     -and-
David A. Avedissian, Esq.
THE LAW OFFICES OF DAVID A. AVEDISSIAN, ESQ. LLC
135 Kings Highway East
Haddonfield, New Jersey 08033
     Attorneys for Plaintiff, Grace Fitzgerald

William A. Garrigle, Esq.
GARRIGLE & PALM ESQS
Cherry Hill Plaza
1415 Marlton Pike East, Suite 311
Cherry Hill, NJ 08034-2210
     Attorney for Defendants Bellmawr Borough, Bellmawr Borough
     Police Department and Officer William Perna

Stuart J. Alterman, Esq.
800 Kings Highway North
Suite 301
Cherry Hill, NJ 08034-1511
     Attorney for Defendant Sergeant Robert Swanson

William J. Fox, Esq,
1626 Pine Street

Philadelphia, PA 19103
    Attorney for Third-party Defendant and Counter Claimant
    Estate of Gregory Ganski

**SIMANDLE**, District Judge:

This matter arises out of a high-speed police pursuit that resulted in an automobile accident in Haddonfield, New Jersey. Immediately before the accident, Defendant Patrolman William Perna ("Officer Perna") had been pursuing Gregory Ganski ("Ganski").  The pursuit terminated when Ganski lost control of his vehicle and struck a vehicle operated by Thomas Fitzgerald (the husband of Plaintiff, Grace Fitzgerald).  Both Thomas Fitzgerald and Ganski were killed as a result of the accident. Plaintiff Grace Fitzgerald (acting in her own right and as administratrix of her deceased husband's estate) ("Plaintiff") now brings a five-count complaint claiming that Officer Perna, Bellmawr Borough (the "Borough"), the Bellmawr Borough Police Department, and Sergeant Robert Swanson violated Thomas Fitzgerald's rights under the Fourth and Fourteenth Amendments (through 42 U.S.C. § 1983) and bringing several state law claims including claims for wrongful death, loss of consortium and willful misconduct.

This matter is before the Court upon three motions: (1) the motion for summary judgment by Defendant Bellmawr Borough, Bellmawr Borough Police Department and Officer Perna (collectively, the "Defendants") with respect to both the

2

Complaint of Plaintiff and the Counterclaim of Counter Claimant
Estate of Gregory Ganksi; (2) the similar motion for summary
judgment of Sergeant Robert Swanson ("Sergeant Swanson") and (3)
the cross-motion to strike certain exhibits contained in
Defendants' motion for summary judgment by Plaintiff Grace
Fitzgerald.[1]  The central issues raised in Defendants' motion are
(1) whether a genuine issue of material fact exists with respect
to Plaintiff's Fourteenth Amendment/substantive due process claim
(i.e., whether Plaintiff provided any evidence that Patrolman
Perna's action in pursuing Ganski was so egregious that it
"shocks the conscience") and (2) whether Defendants are entitled
to "pursuit immunity" (under N.J. Stat. Ann. 59:5-2b) or good
faith immunity (under N.J. Stat. Ann. 59:3-3).

     For the reasons expressed below, the Court will rule as
follows.  First, finding that Defendants have corrected any
issues related to compliance with Fed. R. Civ. P. 56(e) through
Defendants' submission to the Court of the affidavit of
Defendants' counsel William Garrigle, Esq., the Court will deny
Plaintiff's cross-motion to strike certain exhibits contained in
Defendants' motion.  Second, finding that, as a matter of law,

---

[1]     The Court notes that Officer Swanson's motion for
summary judgment is unopposed and counsel conceded at oral
argument that summary judgment in favor of Officer Swanson is
appropriate.  Consequently, the Court will grant Officer
Swanson's motion for summary judgment.

the actions of Officer Perna do not rise to the level of
"shocking the conscience," the Court will grant Defendants'
motion for summary judgment with respect to Plaintiff's
Fourteenth Amendment/substantive due process claim under 42
U.S.C. § 1983 and dismiss this claim, and also with respect to
the Estate of Ganski's counterclaims against the Defendants under
the Fourth and Fourteenth Amendments, in violation of Section
1983.  Because the Court's basis for jurisdiction is Plaintiff's
Section 1983 claims and the Court having dismissed these claims,
the Court will decline to exercise jurisdiction over Plaintiff's
and Counterclaimant's pendent state law claims and will dismiss
these claims without prejudice to refiling in the Superior Court
of New Jersey.  Finally, because counsel have conceded that
summary judgment is appropriate as to Sergeant Swanson, the Court
will grant his motion for summary judgment as to all claims.

## I.   __BACKGROUND__

### __A.   Facts__

Officer Perna is a police officer employed by the Bellmawr
Borough Police Department.  On November 25, 2003, Officer Perna
was working an overtime shift under a special program (called a
"Seat Belt Grant Make It Click") in which Officer Perna was
tasked with stopping drivers not wearing seat belts.  (Affidavit
of William Garrigle, Esq. ¶ 3, Ex., M, Statement of Officer Perna
to Investigator Mark Wolf, dated 12/3/03, at 3; Garrigle Aff. ¶

12, Ex. Y, Dep. Tr. of William Perna at 59.)  While on patrol,
Officer Perna observed a white male with dark hair (Gregory
Ganski) driving his vehicle (a Ford Probe) without wearing a seat
belt.  (Id. at 5; Perna Dep. Tr. at 67-70.)  Officer Perna
pursued Ganski's vehicle, using his emergency lights and
intermittently activating his siren to get Ganski's attention in
order to pull him over.  (Id. at 5-6; Perna Dep. Tr. at 72-73,
78-79.)  Officer Perna also used his mobile computer to run the
registration of Ganski's vehicle which came back as expired.
(Id. at 5; Perna Dep. Tr. at 73.)  Officer Perna then radioed
Bellmawr Police communications that he was attempting to stop a
vehicle and provided communications with Ganski's license plate
number.  (Perna Dep. Tr. at 80.)  The vehicle did not stop in
response to Officer Perna's lights and sirens but did stop at a
red light behind a large truck immediately before the northbound
entrance to Interstate 295.  (Statement of Officer Perna to
Investigator Mark Wolf, dated 12/3/03, at 6-7; Garrigle Aff. ¶ 3,
Ex. L, Bellmawr Police Investigation Report dated 12/10/03 by
William Perna at 1-2; Perna Dep. Tr. at 81-82.)  Officer Perna
pulled behind the vehicle, exited his patrol car and walked
towards the Ganski's vehicle.  (Id. at 8; Perna Dep. Tr. at 82.)

There is some dispute about what happened next.  Officer
Perna testified that, as he approached Ganski's vehicle's
driver's side, Ganski revved his engine up and down, then backed

toward him.  (Perna Dep. Tr. at 83-84.)  Officer Perna testified
that he "was in between [his] vehicle and [Ganski's]" when Ganski
began backing up. (Id. at 84)  Although Officer Perna was not
directly behind Ganski's car, (id. at 88), he "looked up and the
vehicle was coming directly at [him]." (Id. at 90.)  Officer
Perna also stated that he feared for his life and thought the
vehicle would hit him.  (Statement of Officer Perna to
Investigator Wolf, dated 12/3/03, at 7.)  In response, Officer
Perna testified that he turned around and ran back to his patrol
car.[2]  (Perna Dep. Tr. at 91.)  When seated in his patrol car,

---

[2]  Officer Perna gave a similar account when interviewed by
Investigator Wolf of the Camden County Prosecutor's Office
stating that:

> I . . . exit[ed] my patrol vehicle and began to walk up
> towards the suspect's vehicle, . . . as I was walking up
> I heard the motor of the Ford Probe revving up and down
> a couple times . . . I then seen [sic] the vehicle begin
> backing at me.  At this time I, I feared for my life .
> . . that the vehicle was going to hit me so I immediately
> turned around running back into my car to get out of
> harms way danger [sic].

(Statement of Officer Perna to Investigator Mark Wolf, dated
12/3/03, at 80.)  Officer Perna also gave a similar account of
the events preceding the pursuit in his Bellmawr Police
Investigation Report filed on December 10, 2003.  (Bellmawr
Police Investigation Report dated 12/10/03 by William Perna at 1-
2.)  In that report, Officer Perna recounts:

> I shut my siren off keeping my emergency lights on.  I
> exited my patrol vehicle and began to approach this
> vehicle.  I could hear the engine of the Ford Probe
> revving up and down numerous times.  I observed this
> vehicle travel in reverse towards me.  I was in fear
> for my life this vehicle was going to strike me.  I
> turned around running back to my patrol vehicle.

6

Perna observed the suspect's vehicle turn left around the truck and make a sharp turn onto Interstate 295.  (Statement of Officer Perna to Investigator Wolf, dated 12/3/03, at 9.)

Two witnesses that observed the events from a nearby bank recounted the events in a manner largely consistent with the testimony of Officer Perna, although the details differed slightly.  The witnesses, Colleen R. Ezekiel and Therese E. Smollock, were Commerce Bank employees who, from inside the bank across the street from where the traffic stop took place, observed Officer Perna approaching Ganski's vehicle.  (Garrigle Aff. at ¶ 4, Ex. Q, Dep. Tr. of Colleen Ezekiel at 10-12; Ex. R, Dep. Tr. of Therese E. Smollock at 15-16.)  Specifically, Ms. Ezekiel, stated that, when he exited his car, Officer Perna was approximately 10 or 15 feet away from Ganski's car.  (Ezekiel Tr. at 17.)  Ms. Ezekiel testified that after Officer Perna had gotten out of his patrol car, the reverse lights in Ganski's car went on and "Officer Perna jumped" (as did both Ms. Ezekiel and Ms. Smollock) at the sight of the reverse lights, (id. at 18), and looked "surprised."  (Id. at 21.)[3]  Ms. Ezekiel gave some

_____

(Id. at 2.)

[3] Ezekiel testified that it was her impression that, by backing up his vehicle towards Officer Perna, Ganksi "was trying to scare [Officer Perna in order to] get him off him."  (Id. at 25.)  She further testified that her impression was that Ganski was acting in an "aggressive" manner (id. at 25), and that she thought to herself "oh, no, [Officer Perna] better get out of the

contradictory testimony, however, regarding Officer Perna's position when the reverse lights of Ganski's car came on -- testifying first that Officer Perna was "probably just about in front of his car . . . making his way up the driver's side" (id. at 18), but later testifying that Perna had not reached the front of his car at the time Ganski's reverse lights came on and that Officer Perna was running back to his car after Ganski's vehicle's reverse lights came on but before Ganski's vehicle began reversing.  (Id. at 22, 35.)  Ms. Ezekiel then testified that "[i]t actually seemed like the reverse lights had stayed on a few seconds before [Ganski] actually went into reverse . . ." (id. at 34) and that Ganski's car backed straight up at Officer Perna.  (Id. at 36.)

The second witness, Ms. Smollock, testified that Officer Perna pulled his patrol car within two feet of Ganski's car, (Smollock Dep. Tr. at 22) and, upon getting out of his car and approach Ganski's car, Officer Perna "almost got to the – the driver's side door" of Ganski's car.  (Id. at 24.)  Smollock also testified that Ganski backed his car up at an angle.  (Id. at 25.)

It is undisputed that after Ganski backed his car toward Officer Perna, Ganski pulled around the stopped car ahead of him and quickly left the scene with Officer Perna giving chase.

---

way."  (Id. at 18.)

(Smollock Dep. Tr. at 27; Ezekiel Dep. Tr. at 32; Bellmawr Police
Investigation Report at 2.)  During the pursuit, Officer Perna
activated his lights and sirens (see Bellmawr Police
Investigation Report at 2) but did not communicate to dispatch
either that the vehicle tried to run him over or that the car he
was pursuing was a silver Ford Probe.  (Pl.'s Opp. Br. at Ex. D,
Dep. Tr. of Officer William Perna at 39-43.)  The chase led
Officer Perna on to Interstate 295, then back off Interstate 295,
through the parking lots of a closed service station and a liquor
store and into a residential neighborhood (Warwick Road in
Haddonfield, New Jersey).  (Bellmawr Police Investigation Report
at 2.)

    Once in the residential neighborhood, Officer Perna
testified that he observed that the rear wheel of Ganski's
vehicle had "blown out" and at that moment, Officer Perna decided
to end the pursuit.  (Id.; Statement of Officer Perna to
Investigator Wolf, dated 12/3/03, at 14-15.)  Officer Perna then
observed Ganski's car accelerate very quickly as the back wheels
swung out to the right and the car went out of control.
(Statement of Officer Perna to Investigator Mark Wolf, dated
12/3/03, at 15.)  Most unfortunately, Ganski's vehicle went out
of control and crossed the center line of the road and struck
another vehicle coming in the opposite direction.  (Id. at 15-
18.)  The driver of the vehicle coming the opposite way was

9

Thomas Fitzgerald and both he and Ganski were killed as a result of the collision.  (Def.'s Br. at Ex. B, Summary Investigative Report #1.)  The entire pursuit had lasted less than four minutes and covered slightly more than four miles.

_____**B.**   **New Jersey Police Vehicular Pursuit Policy**

_____The New Jersey Police Vehicular Pursuit Policy (the "Pursuit Policy") is a policy "intended to guide police officer's discretion in matters of vehicular pursuit."  (Def.'s Br. at Ex. P.)  Under the section titled "Deciding Whether to Pursue," the Pursuit Policy provides that a police officer "has the authority, at all times, to attempt to stop any person suspected of having committed any criminal offense or traffic violation."  (Id.) Under the section titled "Authorization to Pursue," the policy states, in pertinent part:

> 1.   A police officer may only pursue
>
>> (a) When the officer reasonably believes that the violator has committed an offense of the first or second degree, or an offense enumerated in Appendix A of this policy,[4] or
>>
>> (b) When the police officer reasonably believes that the violator poses an immediate threat to the safety of the public or other police officers.
>
> 2.  Pursuit for motor vehicle offenses is not authorized under the above criteria unless the

_____

[4]  Appendix A of the Policy states that aggravated assault pursuant to N.J. Stat. Ann. 2C:12-1b is an offense "in addition to those of the first and second degree for which vehicular pursuit may be authorized."  (Def.'s Ex. P, Appendix A.)

10

> violator's vehicle is being operated so as to pose an immediate threat to the safety of another person

(Pursuit Policy at 5.)  Even if one of the authorization requirements is satisfied,

> A pursuit should not be automatically undertaken [but rather an] officer must still consider the following factors:
>
> 1.   Likelihood of apprehension.
>
> 2.   Whether the identity of the violator is known to the point where later apprehension is possible.
>
> 3.   Degree of risk created by pursuit . . . .

(Id.)

According to the Pursuit Policy, the pursuing officer must terminate the pursuit if, among other reasons, (a) instructed to do so by a supervisor or (b) the officer believes that the danger to the pursuing officers or the public outweighs the necessity for immediate apprehension of the violator.  (Id. at 6.) Moreover, once the pursuit has been initiated, the officer must "notify communications and a superior officer" in order to provide information such as the reason for the pursuit, the direction of travel, an identification of the violator's vehicle, the number of occupants, the speed of the pursued vehicle and any "[o]ther information that may be helpful in terminating the pursuit or resolving the incident."  (Id. at 7.)

11

### C.   **Procedural History**

Plaintiff filed a five-count Complaint on March 1, 2005 alleging claims against all Defendants including: (1) a claim under 42 U.S.C. § 1983 for violation of the Fourth and Fourteenth Amendments; (2) wrongful death under N.J. Stat. Ann. 2A:31-1; (3) a survival action under N.J. Stat. Ann. 2A:15-3; (4) loss of consortium under New Jersey law; and (5) willful misconduct. Defendants answered and brought a third-party action against the Estate of Gregory Ganski.  In his answer to Defendants' third-party complaint, the Estate of Ganski filed a counterclaim against Defendants claiming a violation of Ganski's civil rights, wrongful death and a survival action.  The case was referred to mediation, but mediation was unsuccessful.  The Court then entered a series of scheduling orders extending the time for discovery from April of 2006 through March of 2007.

On April 2, 2007, Defendants moved for summary judgment. [Docket Item No. 29.]  On April 20, 2007, Sergeant Swanson also moved for summary judgment.  [Docket Item No. 32.]  On May 1, 2007, Plaintiff filed a cross-motion to strike Exhibits A-N and P from Defendants' motion for summary judgment, [Docket Item No. 43], and filed opposition to Defendants' motion for summary judgment.  [Docket Item No. 44].  Also, on April 30, 2007, third-party defendant Estate of Ganski filed opposition to Defendants' motion for summary judgment.  [Docket Item No. 42.]  Briefing was

complete on May 14, 2007 and the Court heard oral argument on the
motions on July 20, 2007.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the materials of record
"show that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of
law."[5]  Fed. R. Civ. P. 56(c).  In deciding whether there is a
disputed issue of material fact, the court must view the evidence
in favor of the non-moving party by extending any reasonable
favorable inference to that party; in other words, "the nonmoving
party's evidence 'is to be believed, and all justifiable
inferences are to be drawn in [that party's] favor.'"  <u>Hunt v.
Cromartie</u>, 526 U.S. 541, 552 (1999) (<u>quoting</u> <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).  The threshold inquiry is
whether there are "any genuine factual issues that properly can
be resolved only by a finder of fact because they may reasonably
be resolved in favor of either party."[6] <u>Liberty Lobby</u>, 477 U.S.

---

[5] A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
<u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  <u>See</u> <u>id</u>.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  <u>See</u> <u>id</u>.

[6]   The moving party always bears the initial burden of
showing that no genuine issue of material fact exists, regardless
of which party ultimately would have the burden of persuasion at
trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986);
<u>Country Floors v. Gepner</u>, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

13

at 250; <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

### III. <u>PLAINTIFF'S MOTION TO STRIKE</u>

Because the Court's decision on Plaintiff's cross-motion to strike all but one of the exhibits submitted with Defendants' summary judgment motion[7] potentially impacts the Court's disposition of Defendants' motion for summary judgment, the Court will address Plaintiff's cross-motion first.  Plaintiff argues that Defendants' motion for summary judgment fails to conform with Fed. R. Civ. P. 56(e) which governs the form of affidavits and further testimony relating to summary judgment motions. Specifically, Plaintiff argues that the unsworn reports of Officer Perna and certain detectives "are inappropriate documents in support of a summary judgment." (Pl.'s Cross-Motion to Strike at 2-3.)  Moreover, Plaintiff contends that other documents submitted by Defendants are unsworn investigative reports "which consist exclusively of inadmissible hearsay" and consideration of them would be "inappropriate in the context of evidence required to be submitted in support of a summary judgment motion." (<u>Id.</u> at 3.)

Rule 56(e) states, in pertinent part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would

_____

[7] The only exhibit that Plaintiff does not seek to strike is Plaintiff's own Complaint.

> be admissible in evidence, and shall show affirmatively
> that the affiant is competent to testify to the matters
> stated therein. Sworn or certified copies of all papers
> or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith. The court may
> permit affidavits to be supplemented or opposed by
> depositions, answers to interrogatories, or further
> affidavits.

Fed. R. Civ. P. 56(e). Thus, interrogatory answers, requests to

admit, depositions, and deposition exhibits are not filed and are

thus not part of the record until submitted as an exhibit to an

affidavit. See Bartkus, N.J. Federal Civil Procedure, § 8-12:3,

at 211-12 (1999). Other discovery materials must also be

attached as exhibits to an affidavit. Id. at 212. "The Court

may not accept or reply on an item of discovery that is not made

an exhibit to an affidavit." Id. An attorney's affidavit,

however, "is appropriate to exhibit evidence proposed through

discovery." Id. Indeed, "the particular forms of evidence

mentioned in the rule are not the exclusive means of presenting

evidence on a Rule 56 motion . . . [rather], [t]he court may

consider any material that would be admissible or usable at

trial." 10A Wright, Miller & Kane, Federal Practice and

Procedure: Civil § 2721 (1998). Thus, in considering a motion

for summary judgment, "the court is entitled to consider exhibits

and other papers that have been identified by affidavit or

15

otherwise made admissible in evidence."  <u>Pollack v. City of Newark</u>, 147 F. Supp. 35, 39 (D.N.J. 1956.)[8]

Plaintiff correctly points out deficiencies in the manner certain evidence was presented in Defendants' motion for summary judgment.  As initially submitted, Defendants' motion does not comply with Fed. R. Civ. P. 56 because the various documents, reports and deposition excerpts were merely attached to the moving papers and not attested by a Rule 56(e) affidavit. However, Defendants corrected this technical deficiency in response to Plaintiff's cross-motion to strike.  [Docket Item No. 46.]  Specifically, Defendants' response contains an affidavit of counsel (William Garrigle, Esq.) attesting to the documents included in Defendants' original motion for summary judgment (Exhibits A-N, and P) as well as an additional nine exhibits which are the deposition testimony of Officer Perna and various witnesses (Exhibits Q-Y.)  The initial deficiency was not substantive, since Plaintiff does not argue that these documents are not true copies or that these were not exchanged in discovery.

---

[8]  <u>See</u> <u>also</u> <u>Yong Hong Keung v. Dulles</u>, 127 F. Supp. 252 (D. Mass 1954)(cited in 10A Wright, Miller & Kane, <u>Federal Practice and Procedure: Civil</u> § 2721 (1998))("I do not read Rule 56(e) . . . as limiting to affidavits matters which may be considered on the motion . . . [but this provision] is an enlarging provision as to what may be considered, not a restriction.")

Because Defendants' response corrects the problems with compliance with Rule 56(e) presented in its initial moving papers, the Court will deny Plaintiff's motion to strike these exhibits.  Mr. Garrigle's May 11, 2007 affidavit attests to the documents submitted as Exhibits A-N, and P in Defendants' motion for summary judgment and describes what each exhibit is or where it was obtained.  (Garrigle Aff. ¶ 3.)  The Garrigle Affidavit also states that Exhibit M (the statement made by Officer Perna to Investigator Wolf) is a sworn statement of Officer Perna and states that he "aver[s] that they are true statements by the parties rendered."[9]  (Id.)  Given the aura of reliability surrounding these official business records of the Bellmawr Police Department and the Camden County Prosecutor's Office, the Court will not strike these exhibits.[10]

---

[9]    Also attached to the Garrigle Affidavit are numerous other exhibits (transcripts of deposition testimony).  (Garrigle Aff. ¶¶ 4-11, Ex. Q - Y.)  Counsel for Plaintiff has raised no objection to the Court's consideration of this evidence.

[10]    Notwithstanding the Court's decision on Plaintiff's motion, the Court notes that essentially all of the material facts relied on by the Court are contained in four sources: (1) the deposition transcripts of Officer Perna, Colleen Ezekiel and Therese Smollock and (2) the Pursuit Policy.  The deposition transcripts of Officer Perna, Ezekiel and Smollock are attached as exhibits to the Garrigle Affidavit, (see Garrigle Aff. ¶¶ 4, 5 and 12, Ex. Q, R and Y) and the Pursuit Policy is attached to the affidavit submitted by Plaintiff's counsel.  (Affidavit of David A. Avedissian ¶ 9, Ex. H.)  Plaintiff has not objected any of this evidence.

## IV. <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

In her opposition to Defendants' motion and at oral argument, Plaintiff concedes that summary judgment is appropriate with respect to: (1) Plaintiff's claims of a violation of the Fourth Amendment against Officer Perna and (2) Plaintiff's claims of violation of both the Fourth and Fourteenth Amendment against Bellmawr Borough.  Moreover, also at oral argument, Plaintiff conceded that Plaintiff's claims against the Borough Police Department must also be dismissed as the police department is not a proper defendant.[11]  The Court agrees.  Consequently, the claims will be dismissed and the sole remaining issues in Defendants' motion are (A) whether Defendant Officer Perna is liable to Plaintiff and to Counterclaimant under Section 1983/substantive due process and (B) whether Defendants are entitled to immunity with respect to the state law claims under either (i) pursuit immunity or (ii) good faith immunity.

---

[11]  "It is well-established that in a Section 1983 cause of action, a police department cannot be sued in conjunction with a municipality because the police department is merely an administrative arm of the local municipality and not a separate judicial entity." <u>Venner v. Delran Twp.</u>, No. 05-2480, 2007 U.S. Dist. LEXIS 4648, *9, n. 6 (D.N.J. Jan. 22, 2007); <u>see</u> <u>also</u> <u>Iglesia v. City of Glassboro</u>, No. 04-3034, 2007 U.S. Dist. LEXIS 42758 * 6 n.4 (D.N.J. Jun. 13, 2007).

18

**A.   Plaintiff's Section 1983 Claim Against Officer Perna**

**1.   The Parties' Positions**

In Count I of her Complaint, Plaintiff alleges that Officer Perna's action of pursuing Ganski deprived Plaintiff of her husband's rights "under the Laws and Constitution of the United States, in particular, the . . . Fourteenth Amendment[]." (Complaint, Count I ¶ 2.)  In his motion for summary judgment, Officer Perna argues that summary judgment is appropriate with respect to Plaintiff's Section 1983 claim under the Supreme Court's holding in <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998).  (Def.'s Br. at 23-25.)  According to Defendants, in order to prove a violation of substantive due process under the Fourteenth Amendment, a plaintiff must show that the state official's actions were so egregious that it "shocks the conscience."  (<u>Id.</u> citing <u>Lewis</u>, 532 U.S. at 846.)  According to Defendants, an action rises to the "conscience-shocking" level only when the "conduct [is] intended to injure in some way unjustifiable by any government interest."  (Def.'s Br. at 25 citing <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986)).

Defendants argue that <u>Lewis</u> is controlling and any fault claimed on the part of Officer Perna does not amount to a due process violation as it does not shock the conscience.  (<u>Id.</u>) According to Defendants, there is no genuine issue of fact and no evidence to suggest that Officer Perna had an improper motive

when he initiated the pursuit of Ganski.  (Id.)  To the contrary,
Officer Perna was performing his duties as a police officer when
he initiated the pursuit.  (Id.)  Moreover, Defendants contend
that Officer Perna's failures to follow certain procedures
contained in the Pursuit Policy during the pursuit (i.e.,
alerting dispatch to the fact that he was engaged in a pursuit or
conveying to dispatch certain details related to the pursuit),
similar to the defendant's actions in Lewis, do not rise to the
level of shocking the conscience.

In her opposition, Plaintiff argues that "Defendants have
not properly articulated [the] standard in their motion for
summary judgment and have not cited any relevant [] cases which
were decided subsequent to" Lewis.  (Pl.'s Opp. at 20-21.)
Plaintiff focuses on the language of Lewis which states that
"[h]igh-speed chases with no intent to harm suspects or *to worsen
their legal plight* do not give rise to liability."  (Id. citing
Lewis, 523 U.S. at 854.) Plaintiff contends that she has produced
ample evidence from which a jury could reasonably conclude that
Officer Perna intended to "worsen the legal plight" of Ganski
when Officer Perna engaged in the pursuit.  Plaintiff challenges
Officer Perna's perception of Ganski's actions of backing his car
up while Officer Perna approached, stating that "he would have no
reason to believe he was being assaulted."  (Id. at 21.)  Under
these circumstances, according to Plaintiff, "a jury could easily

20

conclude that defendant Perna's explanation of how Ganski supposedly tried to run him over ([which served as] the basis of the aggravated assault claim) is not credible" demonstrating "the requisite intent of Perna to worsen Ganski's legal plight."  (Id. at 23.)

### 2.  Analysis

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  In Lewis, the Supreme Court established a standard for liability for claims brought for violation of a plaintiff's substantive due process rights under the Fourteenth Amendment. Lewis, 523 U.S. at 854.  In Lewis, a county sheriff's deputy was returning to his patrol car after responding to a call when he observed a motorcycle containing a driver and passenger approaching at high speed.  Id. at 837.  After attempting to stop the motorcycle, the sheriff's deputy switched on his emergency lights and siren and began a high-speed pursuit.  Id.  The chase ended after the motorcycle tipped over as the driver attempted a sharp turn.  Id.  The deputy slammed on his brakes, but his car skidded into the motorcycle's passenger, causing massive injuries and his death.  Id.  The motorcycle's passenger's family brought an action under Section 1983 against the sheriff's deputy,

alleging a deprivation of the passenger's Fourteenth Amendment substantive due process right to life.  Id.

In reversing the Ninth Circuit Court of Appeals, the Supreme Court held that in a due process challenge to executive action, the threshold question is whether the behavior of the government officer "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Id. at 847 n. 8; see also Sanford v. Stiles, 456 F.3d 298, 305 (3d Cir. 2006).  The Supreme Court determined that, in the specific context of a high-speed police pursuit, only an "intent to harm" the plaintiff could shock the conscience.  Id. at 854 ("[W]e hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under Section 1983.); Sanford, 456 F.3d at 305.  Many courts subsequent to Lewis have held that "the state's mere negligence will not 'shock the conscience' for purposes of establishing a substantive due process claim."  Estate of Soberal v. City of Jersey City, No. 04-2788, 2006 U.S. Dist. LEXIS 50691 * 26 (D.N.J. July 24, 2006); see e.g., Lewis, 523 U.S. at 848-49 ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.")[12]

_____

[12]    The Court notes that, following Lewis, the Third Circuit has "stated that in substantive due process cases, '[t]he exact degree of wrongfulness necessary to reach the conscience-

22

Applying this standard to the facts of the case, the <u>Lewis</u> Court held that the fault claimed on the sheriff's deputy's part fails to meet the "shocks the conscience" test.  <u>Lewis</u>, 523 U.S. at 854.  The Supreme Court held that even as alleged, the sheriff's deputy's culpability did not rise to the level of "shocks the conscience" holding that:

> [The sheriff's deputy] was faced with a course of lawless behavior for which the police were not to blame. They had done nothing to cause [the driver's] high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes. [The driver's] outrageous behavior was practically instantaneous, and so was [the sheriff's deputy's] instinctive response. While prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce [the driver's] lawlessness, or to terrorize, cause harm, or kill. Prudence, that is, was subject to countervailing enforcement considerations, and while [the sheriff's deputy] exaggerated their demands, there is no reason to believe that they were tainted by an improper or malicious motive on his part.
>   *       *       *       *       *
> Regardless whether Smith's behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does

---

shocking level depends upon the circumstances of a particular case.'" <u>Sanford</u>, 456 F.3d at 306 (quoting <u>Miller v. City of Phila.</u>, 174 F.3d 368, 375 (3d Cir. 1999)).  Indeed, at times, a showing of an intent to cause harm is required but at other times, deliberate indifference may suffice to "shock the conscience" and that the degree of culpability is indirectly proportional to the time a defendant has to deliberate before making a decision or judgment call.  <u>See</u> <u>Miller</u>, 174 F.3d at 375; <u>Ziccardi v. City of Phila.</u>, 288 F.3d 57, 58-59 (3d Cir. 2002); <u>Nicini v. Morra</u>, 212 F.3d 798, 800-01 (3d Cir. 2000)(en banc).

not shock the conscience, and petitioners are not called upon to answer for it under § 1983.

Id.

### a.   Intent to Harm

Because the facts of the present case are nearly identical to the facts in Lewis and Officer Perna was required to make a split-second decision in a "hyperpressurized environment," the Court will apply the "intent to harm" standard in determining whether Officer Perna's decision to pursue Ganski was so egregious that it shocks the conscience. Here, Plaintiff has presented no evidence to suggest that Officer Perna decided to pursue Ganski with intent to harm him. Plaintiff has had the opportunity to depose Officer Perna during discovery and, in his opposition, to attempt to raise a genuine issue of material fact with respect to Officer Perna's intentions related to the pursuit and whether he intended to harm Ganski. However, Plaintiff present no such evidence.[13]

In her opposition brief, Plaintiff expends considerable effort demonstrating Officer Perna's intent to harm Ganski by pointing out discrepancies between Officer Perna's account of Ganski backing up into him and those of other witnesses. There is no dispute that Ganski backed up his vehicle toward Perna and

---

[13]  Indeed, upon questioning from the Court, Plaintiff's counsel all but conceded that there is no evidence of intent to physically harm Ganski.

24

his vehicle while Perna was outside his patrol care attempting to encounter and apprehend Ganski.  This is a situation fraught with danger to Perna and to other motorists, regardless of whether Ganski took dead aim at Perna's person as he backed up and eluded.[14]  Such discrepancies, however, are not crucial to the determination of whether Officer Perna demonstrated intent to harm Ganski.  At best for Plaintiff, Officer Perna's misperception of the threat posed by Ganski's backing up his car towards him was an error in judgment on the part of Officer Perna.  Such an error may create a genuine issue of material fact regarding whether Officer Perna was negligent in commencing the chase at the red light, but not whether he had any intent to harm Ganski.  Because the constitutional standard for liability in a police pursuit case demands evidence of police conduct that shocks the conscience, mere negligence by a officer does not rise to this level, and Defendants are entitled to summary judgment with respect to the constitutional claim.

---

[14]  The testimony of eye witness Colleen Ezekiel, however, suggests that Perna's conclusion that Ganski was attempting to hit him with his care was not unreasonable.  Specifically, Ms. Ezekiel states that she "jumped" when she saw Ganski's reverse lights come on and stated that it was her impression that Ganski's reversal was "aggressive" and designed to get Perna "off of him" or to "scare" him.  Moreover, Ezekiel also states that Officer Perna also "jumped" and looked "surprised" when Ganski began to back up towards Officer Perna and his vehicle.

### b.   Intent to Worsen Ganski's Legal Plight

Plaintiff also argues that a genuine issue of material fact exists as to the issue of whether Officer Perna's attempt to arrest Ganski demonstrates an intent to "worsen [Ganski's] legal plight."  In her brief in opposition, Plaintiff argues that, in chasing Ganski, Officer Perna intended to worsen his legal plight by arresting him.  In support of his position, Plaintiff cites Slusarchuk v. Hoff, 346 F.3d 1178, 1183 (8th Cir. 2003) in which the Eighth Circuit interprets the term "worsen legal plight."

The Court finds, however, that Slusarchuk does not support Plaintiff's position.  In fact, Slusarchuk specifically rejects the argument put forth by Plaintiff that a police officer's pursuit of a suspect is an attempt to worsen the suspect's legal plight.  Id. (holding that a reading of the phrase "worsen legal plight" expansively (as Plaintiff advocates is this case) would "eviscerate the intent-to-harm standard that the [Supreme] Court adopted" because "every police pursuit is intended to 'worsen [the] legal plight' of the suspect by arresting him.")  Consequently, because Plaintiff has failed to cite any legal authority for interpreting the phrase "worsen [a suspect's] legal plight" in the manner advocated for by Plaintiff (and this Court has found none), the Court declines to interpret the phrase expansively or conclude that Officer Perna's pursuit of Ganski

was an attempt on the part of Officer Perna to worsen Ganski's legal plight.[15]

**B.   <u>Plaintiff's State Law Claims</u>**

In her Complaint, Plaintiff brings a number of state law claims (including a claim of wrongful death, willful misconduct and loss of consortium) against Officer Perna and the Borough of Bellmawr.  Having dismissed all of Plaintiff's Section 1983

---

[15]   At oral argument, Plaintiff modified this argument, taking a slightly different -- but equally unpersuasive -- position on how Officer Perna attempted to worsen Ganski's legal plight.  Plaintiff argued that Officer Perna sought to worsen Ganski's legal plight by fabricating the charge of aggravated assault stemming from the traffic stop.  According to Plaintiff, in fabricating this charge, Ganski would face increased fines and possible incarceration.  Thus, it is asserted that the fabrication worsened Ganski's legal plight.

Even if this Court were to recognize Plaintiff's unsupported interpretation of the phrase "worsen legal plight" -- which it will not -- summary judgment on behalf of Officer Perna would still be appropriate.  Plaintiff's argument is based on the fact that genuine issues exist regarding whether Officer Perna fabricated the charge of aggravated assault.  However, as this Court found <u>supra</u>, there are no facts to suggest that Officer Perna fabricated this charge as a post-hoc explanation of why he pursued Ganski.  To the contrary, it is undisputed that the eyewitnesses observed that Ganski suddenly backed his vehicle up towards Officer Perna while Officer Perna was outside of his vehicle attempting to apprehend Ganski.  This action created a situation fraught with danger.  As in <u>Lewis</u>, Ganski's outrageous behavior was practically instantaneous and Perna did nothing to cause Ganski's flouting of law enforcement authority while creating a danger to other motorists.  Officer Perna's conclusion that he was assaulted by Ganski was no doubt a reasonable reaction to Ganski's actions.  Given the eyewitness testimony which is confirmatory of the fact, as Perna testified, that Ganski suddenly backed up in traffic as Perna was on foot toward the rear of Ganski's vehicle, no reasonable jury could find that Perna's perception of danger was so wrong as to be fabricated as a reason for pursuit.

claims against the Defendants (and Sergeant Swanson as discussed in Section V, <u>infra</u>), the Court may decline to exercise supplemental jurisdiction over these state claims.  <u>See</u> 28 U.S.C. § 1367(c)(3)(where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim); <u>Pa. Nurses Ass'n v. Pa. State Educ. Ass'n.</u>, 90 F.3d 797, 801 (3d Cir. 1996).  Indeed, the Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted)(emphasis added); <u>Shaffer v. Board of Sch. Directors of Albert Gallatin Area Sch. Dist.</u>, 730 F.2d 910, 912 (3d Cir. 1984)("pendent jurisdiction should be declined where the federal claims are no longer viable, absent extraordinary circumstances.")(internal quotations omitted).[16]  Moreover, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."

_____

[16]   Moreover, the Third Circuit "has emphasized in the past that 'time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction.'"  <u>Shaffer</u>, 730 F.2d at 912 (quoting <u>Weaver v. Marine Bank</u>, 683 F.2d 744, 746 (3d Cir. 1982)).

<u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966)); <u>McLemore v. City of Trenton</u>, No. 05-4631, 2007 U.S. Dist. LEXIS 52355, *17 (D.N.J. July 19, 2007).

The Court, having determined that Plaintiff's Section 1983 claim has no merit and must be dismissed, declines to exercise jurisdiction over Plaintiff's state law claims.  To be sure, certain factors weigh in favor of the Court retaining jurisdiction.  For example, the Court is mindful that this case has been pending in this Court for over two years, the parties have conducted over a years' worth of discovery, and the parties have had oral argument on the issues of state law before this COurt.  Thus, it may be in the interest of judicial economy to retain jurisdiction.

However, there are no <u>extraordinary</u> circumstances that compel this Court to retain jurisdiction.  <u>See</u> <u>Shaffer</u>, 730 F.2d at 912.  Perhaps more importantly, these factors are outweighed by the fact that Plaintiff's state law claims present difficult issues of state law -- namely whether Officer Perna and the Borough of Bellmawr are immune from liability under so-called "pursuit liability" or "good faith immunity," which are codified at N.J. Stat. Ann. 59:5-26 and 59:3-3, respectively.  Analyses required to determine whether Officer Perna is immune under either type of immunity liability will require the careful weighing of facts and interpretation of numerous legal precedents

29

both for and against the Court's determination of whether Officer Perna was engaged in "willful misconduct" (the applicable legal standard for a pursuit immunity analysis), see Tice v. Cramer, 133 N.J. 347, 367 (1993), or whether Officer Perna acted with "objective reasonableness," see Fielder v. Stonack, 141 N.J. 101, 124 (1995).  Although this Court has noted the New Jersey Vehicular Pursuit Policy, above, nothing in this Opinion adjudicates whether Officer Perna has or has not breached that policy, nor whether such a breach would support a claim arising under New Jersey's Tort Claims Act or other state law.

The Court finds that the state court is a better forum to provide the "surer-footed reading of the applicable law" required by Gibbs.  See 383 U.S. at 726; McLemore, 2007 U.S. Dist. LEXIS 52355, at *17.  Thus, this Court will decline to exercise jurisdiction over Plaintiff's pendent state law wrongful death, loss of consortium, willful misconduct and survival claims and will dismiss such claims without prejudice to their refiling in the Superior Court of New Jersey.

## V.   DEFENDANT SERGEANT SWANSON'S MOTION FOR SUMMARY JUDGMENT

Sergeant Swanson has also moved for summary judgment.  This motion is unopposed and at oral argument, Plaintiff's counsel conceded that summary judgment in favor Officer Swanson should be granted.  Consequently, the Court will grant Sergeant Swanson's motion for summary judgment.

## VI. __CONCLUSION__

For the reasons discussed above, the Court will first deny Plaintiff's cross-motion to strike certain exhibits contained in Defendants' motion.  The Court finds that Defendants have corrected any issues related their compliance with Fed. R. Civ. P. 56(e) through Defendants' supplemental submission to the Court.  In addition, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's Fourteenth Amendment/substantive due process claim under 42 U.S.C. § 1983 and dismiss this claim.  In so holding, the Court finds that, as a matter of law, no reasonable jury could conclude that the actions of Officer Perna rise to the level of "shocking the conscience."  Because the Court's basis for jurisdiction is Plaintiff's Section 1983 claims and the Court having dismissed these claims, the Court will decline to exercise jurisdiction over Plaintiff's pendent state law claims and will dismiss these claims without prejudice.  Finally, because Plaintiff conceded that summary judgment is appropriate as to Sergeant Swanson, the Court will grant his motion for summary judgment.  The accompanying final Order is entered.


__September 6, 2007__                    __s/ Jerome B. Simandle__
Date                                     JEROME B. SIMANDLE
                                         United States District Judge


31